IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Groupo Condumex, S.A. etc.,                           Case No. 3:99CV7316

              Plaintiff

    v.                                                                    ORDER

SPX Corporation, et al.,

              Defendants

This case involves the alleged breach of an express warranty. Defendant and counter-claimant Dana Corporation [Dana], alleges that defendant SPX Corporation [SPX] breached a warranty in an Asset Purchase Agreement [Agreement] for the purchase of SPX's Sealed Power Division. The warranty at issue states that there are no rights of first refusal inhering in favor of others regarding stock in a joint venture transferred to Dana as part of its acquisition of the Sealed Power Division. Jurisdiction is proper under 28 U.S.C. § 1331.

The other party to the SPX joint venture was Groupo Condumex S.A. De C.V. [Condumex], a Mexico-based manufacturer. Condumex and SPX, through a subsidiary of the Sealed Power Division, jointly owned the shares of Promotora De Industries Mecanicas, S.A. De C.V. [Promec], a Mexico-based manufacturer of automobile components.

In an earlier decision, I held that SPX breached the warranty regarding no rights in third parties of a right of first refusal. I ordered SPX to transfer the Promec shares to Condumex, which had begun this suit against Dana and SPX to enforce that right. [Doc. 211].

SPX did so. Thereafter, Dana settled its remaining disputes with Condumex. Then it turned to the instant aspect of this litigation – namely, its claim for damages allegedly resulting from SPX's breach of the first refusal rights.

A discovery dispute has stalled the "progress" of this case. Following unsuccessful efforts to resolve this dispute, SPX has filed a motion to compel discovery [Doc. 253] and Dana has filed a motion for a protective order. [Doc. 259]. For the reasons discussed below, SPX's motion shall be denied and Dana's motion shall be granted.

**Background**

SPX's motion to compel seeks discovery, in general, of: 1) what Dana knew and when it knew it regarding breach of the warranties on which it bases its current claim against SPX; and 2) damages Dana incurred as a result of the alleged breach. Dana asserts that neither of these issues is relevant to its breach of warranty counter-claim against SPX. At issue is whether the requested information is relevant to Dana's claims and SPX's affirmative defenses. [Doc. 274].

**Standard of Review**

According to Fed. R. Civ. P. 26(b)(1), parties may only obtain discovery regarding matters "relevant to any party's claim or defense." As a means of enforcement, rule 26 permits a court to limit the scope of discovery by court order. Fed. R. Civ. P. 26(b); *see also, Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (discussing a district court's ability to limit discovery); *Brantley Capital Corp. v. Pinkas*, 2007 WL 2034420, *1 (N.D. Ohio) ("the law

2

vests a trial court with the authority to limit pretrial discovery"). The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles*, *supra,* 474 F.3d at 305, (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)).

## Discussion

### 1. Is Dana's Knowledge of Condumex's Right of Refusal Relevant?

The parties dispute whether Dana's knowledge, before the closing of its purchase of the Sealed Power Division, of Condumex's right of first refusal is relevant to Dana's claim against SPX for breach of the first refusal warranty. SPX asserts two theories of relevancy: 1) under Michigan law, which controls, Dana's reliance on the warranty is a necessary element of any claim for breach of warranty; and 2) I have already determined that each party's knowledge of Condumex's right of first refusal is relevant to a claim for damages for a breach of warranty.

### A. Does Michigan Law Require Reliance?

Adjudication of the instant discovery dispute requires determination of whether Michigan law requires a showing of reliance before a party may recover damages for a breach of warranty. SPX says that Dana must show that it relied on the truthfulness of the breached warranty before it can recover for the breach; Dana says that whether it relied on the warranty's truthfulness is immaterial, because such reliance is not an element of its proof.

SPX relies on a series of early cases in which Michigan courts, according to SPX, held that a plaintiff must prove reliance to prevail on a breach of warranty claim. Dana contends that

3

subsequent development in the case law, which has, however, occurred in other jurisdictions, eradicated the potency of the Michigan cases on which SPX relies.

Alternatively, Dana argues that a non-waiver clause in the Agreement relieves it of any obligation to prove that it relied on the truthfulness of the first refusal warranty.

Dana's arguments are more persuasive.

Modern courts in Michigan adjudicating claims for breach of warranty have not required reliance on the victim's part. *See Borman's Inc. v Lake State Development Co.*, 230 N.W.2d 363, 367 (Mich. App. 1975) ("The existence of the contract or lease agreement is certainly not disputed. Furthermore, the plaintiff has alleged a breach of specific provisions of that agreement and substantial damages flowing therefrom. Plaintiff, at the very minimum, states a cause of action for breach of the para. 6(b) service warranty."); *Knight v. Rhoades Aviation, Inc.*, 2006 WL 66633, *4 (Mich App.) ("To state a claim for breach of warranties, plaintiff must allege the existence of warranties, their breach, and damages as a proximate result of the breach.").

This approach is logical as, under Michigan law, "a breach of warranty is essentially a breach of contract." *Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth*, 2003 WL 22439654, *5 (Mich App.). Thus, as to a claim of breach of warranty, the elements of proof are those for a claim for a breach of any other contractual obligation – namely, "that a contract existed between the parties and that a breach of one or more of the contractual terms occurred." *Lindsay & Lindsay, LLP v. Rausch*, 2007 WL 4270771, *3 (Mich.App.). *Accord*, *Michigan AFSCME Council 25 v. Livingston County Road Com'n*, 2007 WL 3357398, *5 (Mich.App.) ("to establish a claim for breach

of contract, a plaintiff must establish both the elements of the contract and its breach.").[1] I see no, nor does SPX provide any, reason why the law should require something more (*i.e.,* reliance) where the provision at issue is a warranty.[2]

The cases SPX cites in response are of limited utility and less persuasiveness.

First, and most importantly, at issue in most of those cases was not only whether reliance was necessary to recover for a breach of a warranty, but also whether the parties had created an enforceable warranty in the first instance.[3] *See Dvoracek v. Goldstein*, 19 N.W.2d 333, 335 (Mich.

---

[1] According to the Sixth Circuit:

> To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract. *See Pawlak v. Redox Corp.*, 182 Mich.App. 758, 453 N.W.2d 304, 307 (1990). The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation. *Thomas v. Leja*, 187 Mich.App. 418, 468 N.W.2d 58, 60 (1990). Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breached caused the plaintiff's injury. *See Platsis v. E.F. Hutton & Co., Inc.*, 642 F.Supp. 1277, 1309 (W.D.Mich.1986).

*In re Brown* 342 F.3d 620, 628 (6th Cir. 2003).

[2] If anything, a reliance requirement would be particularly inappropriate in the breach of warranty context. If a party claiming breach of warranty must also show reliance, it will undermine the certainty that a contract and a warranty are to give to the parties' transaction and expectations. If a party making a promise can anticipate that it can later challenge a claim of breach of the promise on the basis that the other party knew or had reason to know that the warranty was not accurate, that party will be tempted to make less reliable promises and/or to take the risks which Dana alleges SPX accepted under the Agreement. This, in turn, will spawn litigation, which, as the "progress" of this case demonstrates powerfully, will be time-consuming and expensive because of the type of discovery entailed in trying to determine exactly what the other party knew and when it knew it.

[3] I reject Dana's arguments that, in deciding the pending motions, I should look to how Michigan's

5

1945) ("It must be considered that the jury found the warranty and breach thereof claimed by plaintiff. . . . There was testimony . . . that plaintiff relied on the skill and judgment of defendant in considering the nature of the horses as to gentleness and tractability."); *Curby v. Mastenbrook*, 286 N.W. 123, 125 (Mich. 1939) ("We must also reject defendants' argument, . . ., that an oral warranty could not exist because of a written contract of sale."); *J. B. Colt Co. v. Reade*, 190 N.W. 672, 673 (Mich. 1922) ("Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty.");[4] *Barron v. Probert*, 202 N.W. 941, 941 (Mich. 1922) ("It is the claim of the plaintiffs that in addition to the statements contained in the catalogue, we quote from the testimony: 'The sales manager announced from the stand just prior to the sale of the animals that this was to be a breeders' sale, and all the animals sold were guaranteed to be breeders.' Defendant disputes this claim.");[5] *Deuel v. Higgins*, 1861 WL 3272, *2 (Mich.)

---

courts apply the UCC in cases involving the sales goods. I agree with the decision in *Plymouth Pointe Condo. Ass'n*, *supra,* 2003 WL 22439654, * 2, in which the court noted the inapplicability of "UCC concepts to a non-UCC breach of warranty claim."

[4] Furthermore, the definition the court relies on it took from the Uniform Sales Act which the Michigan Legislature has since repealed. *O. M. Scott & Sons Co. v. Michigan State Tax Com.*, 145 N.W.2d 226, 229 (Mich. App. 1966).

[5] The court in *Barron* never stated that reliance was necessary for a plaintiff to recover. Rather, the court upheld a jury instruction requiring reliance. *Barron*, *supra,* 202 N.W. at 942. The instructions' requirement of reliance, furthermore, was, likely the result of the statute in effect at the time. *Kepling v. Schlueter Mfg. Co.*, 378 F.2d 5, 6 (Mich. 1967) (citing *Barron* as evidence that the statute in effect at the time governing express warranties required reliance).

(finding the parties did not create a warranty because: "He, neither in this nor either of his subsequent letters, apologizing for his delinquency and soliciting further time, so much as intimates a warranty or claim for damages, and yet nothing would have been more natural, in the circumstances in which he was placed, had he supposed himself entitled to any damages."). None of these cases involved a factual scenario similar to this case, in which there is no dispute about the presence of the warranty, or, in light of my earlier ruling, its breach.

Whether a party manifested reliance can be relevant on the issue of the parties' intent to create a warranty where one party later claims that no warranty arose from the transaction. Such reliance, if shown [and, as well, if shown to have been known to the party charged with having breached the putative warranty] is, like all manifestations of intent, an outward sign of what the parties agreed to.[6] This is not so, and reliance should not be an issue, where there is no dispute about the existence of the warranty.

SPX also cites *May v. Otto*, 211 N.W. 64 (Mich. 1922) and *Omo v. Bernart*, 65 N.W. 622 (Mich. 1895). *May* is distinguishable in that it concerns a plaintiff's claim for recision on the basis of fraud. 211 N.W. at 542. Reliance is, of course, an element of a fraud claim. *E.g., City of Novi v. Robert Adell Children's Funded Trust*, 701 N.W.2d 144, 152 n.8 (Mich. 2005).

In *Omo*, *supra,* 65 N.W. at 623, guarantors organized a corporation in whose charter they guaranteed that any stocks would be non-assessable until the guarantors had spent $30,000. Plaintiff purchased shares in reliance on this guaranty. *Id.* A third party subsequently sued plaintiff for the corporation's losses before the guarantors had spent $30,000. *Id.*

---

[6] On the other hand, where a party fails to show reliance where the existence of a warranty *ab initio* is in dispute, such failure undercuts its claim that the other party incorporated the putative warranty in the transaction.

The issue in *Otto* was whether the plaintiff should indemnify the defendants under the guaranty. The court, after a brief discussion, found for the plaintiff. Though the court noted that the jury found that plaintiff had relied on the guarantors' assertions, it did not discuss whether, much less affirmatively state, that reliance was a necessary element of plaintiff's proof. *Id.*

Considering the court's lack of analysis in *Otto*, its failure to cite any legal authority, the lack of clarity as to whether the court sets out the rule asserted by SPX, and the fact that no court has cited it, the case lacks both persuasive power and controlling weight. *See Smith v. Jones*, 169 N.W.2d 308, 320 (Mich.1969) (declining to follow a decision lacking citation to authority; noting that no case had cited the decision).

Declining to impose an obligation on a party claiming damages for breach of warranty to prove reliance on the warranty conforms to the current views of a majority of other jurisdictions. *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 200 (D. Mass); *see Power Soak Sys. v. EMCO Holdings, Inc.*, 482 F. Supp. 2d 1125, 1134 (W.D. Mo. 2007) ("The modern trend is that a buyer need not rely on a seller's express warranty in order to recover for the seller's subsequent breach of the express warranty."); *Southern Broadcast Group, LLC v. GEM Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1321-1324 (M.D. Fla. 2001) (citing cases applying Illinois, Pennsylvania, Connecticut, Montana, New York, New Mexico, Indiana and Massachusetts law); *Norcold Inc. v. Gateway Supply Co.*, 154 Ohio App.3d 594, 601 (2003) (also recognizing that a "decisive majority of courts" have held that reliance is not an element for claim of breach of warranty).

The contrary cases SPX cites do not undercut the persuasiveness of the majority view. In *Kazerouni v. DeSatnick*, 228 Cal. App. 3d 871, 874 (1991), the court found that a buyer of a business could not recover against a seller for misrepresentations which it corrected before the

8

transaction closed. The court emphasized that California law generally requires reliance. *Id.* at 873, n.3. The court, however, cited only two tort cases in support. *Bleacher v. Bristol-Meyers Co.*, 163 A.2d 526, 527 (Del. Super. 1960), similarly, involved the adjudication of a tort claim. In *Middleby Corp. v. Hussman Corp.*, 1992 WL 220922, *6 (N.D. Ill.), the court predicted that Delaware law would require a plaintiff to prove reliance before it could recover for breach of warranty. The Seventh Circuit has since criticized that decision, questioning whether Delaware's courts "would require reliance today." *Vigertone AG Prods., Inc. v. AG Prods., Inc.*, 316 F.3d 641, 649 (7th Cir. 2002).

Finally, while the Eighth and Tenth Circuits have predicted that Kansas and Minnesota law would require reliance, other courts frequently have criticized these decisions. *See, e.g., Giuffrida v. American Family Brands, Inc.*, 1998 WL 196402, *4 (E.D. Pa.) (criticizing what it called the "*Roper/Hendricks* approach"); *Southern Broadcast*, *supra,* 145 F. Supp. at 1321 (stating that *Hendricks* and *Roper* stand in stark contrast to the "decisive majority" of courts that have rejected the reliance requirement); *Mowbray*, *supra,* 189 F.R.D. at 200 (identifying *Hendricks* and *Roper* as the "only two" cases applying state law that the court could identify that have required reliance for breach of express warranty, and questioning whether *Hendricks* and *Roper* are still good law).

### B. Does the Agreement Make Dana's Knowledge Relevant?

SPX also asserts that I previously determined that, under the Agreement, both parties' knowledge was relevant to whether Dana could recover for breach of warranty. Though the Agreement references only SPX's knowledge, I should not, SPX argues, now contradict my previous decision. This argument misinterprets that decision.

In the order to which SPX refers, the parties contested whether Dana should indemnify SPX under § 10.1(b)(i) for losses caused by SPX's breach of the warranty. *Grupo Condumex v. SPX Corp.*, 163 F. Supp. 2d 857, 859-60 (N.D. Ohio 2001). Section 10.1(b)(i) provides that SPX will indemnify Dana for any losses it suffers as a result of a breach of warranty provided SPX had knowledge of the facts and circumstances leading to the breach. The indemnification clause, however, excludes representations and warranties contained in § 3.1 and § 3.2 relating to certain properties from the knowledge requirement. The parties specifically disputed which properties were covered by the exclusionary clause. *Id.* at 860-61. Relying on basic principles of grammatical interpretation, I concluded that the exclusion from the knowledge requirement applied only to the items listed directly before the exclusionary clause. *Id.* at 861.

I, furthermore, stated that the context, one in which Dana was aware of Condumex's complaints, supported the application of the legal antecedent rule because it produced a result which exempted SPX from liability. *Id.* at 862.

I did not base my decision in that opinion on my observation about the context of the case. That observation was, rather, simply makeweight, providing some additional support to my decision, which otherwise stood on its own foundation of grammatical construction. *See id.* ("In this case, the context, rather than indicating otherwise, supports application of the last antecedent rule.").

That decision, moreover, involved a convoluted, complex, and, at first and even further glance, nearly incomprehensible clause in § 10.1(b)(i). *See id.* at 860, n.3 ("This is not a decision I anticipated reaching prior to having heard the parties' oral argument. At the outset of the session, I told counsel that I had spent 'countless hours . . . trying to make sense of that segment of section 10.1b1 [sic], and I cannot . . . My present view is that it makes no sense.'").

The present dispute does not call on me to disentangle such complexities, or try to sort out syntactical confusion. Though § 10.1(b)(i) is again at issue, SPX has presented no, nor do I see any possible twist of the language requiring Dana to show it relied on the warranty before it can recover damages for its breach. The "context" of the case mattered somewhat then; now it does not. My earlier observation about such context is not here pertinent, much less controlling, and does not cause, much less compel introduction of an element of proof that otherwise is not requisite.

### 2. What Portions of the Condumex-Dana Settlement Are Relevant?

### A. The Scope of the Offsetting Benefits Rule

The parties also dispute whether SPX may seek discovery regarding the details of Dana's settlement with Condumex. Dana admits that SPX may seek discovery regarding any matters which offset its alleged loss. Dana argues, however, that what it obtained from the Condumex settlement can offset its damages here only if it could have acquired such benefit without SPX's breach of the warranty. SPX, defining offsetting losses more broadly, argues that I must consider any gain to Dana resulting in any way from the breach, including gains Dana might have realized even without the breach.

Both parties cite only one Michigan case – *Tel-Ex Plaza v. Hardees Restaurants, Inc.*, 255 N.W.2d 794 (Mich. App. 1977) – in support of their respective arguments. In *Tel-Ex Plaza,* Hardees signed a lease requiring among other things the lessor, Tel-Ex Plaza, to lease Hardees the land and erect a building on the premises. *Id.* at 132-33. Hardees subsequently cancelled the lease and Tel-Ex Plaza, in response, leased the premises to a third-party. *Id.* at 133. Under the new lease, Tel-Ex Plaza collected less rent, but did not have to construct the building. *Id.* The trial court found that Hardees

11

had breached the agreement, but Tel-Ex Plaza had not shown any damages in light of its savings from not having to construct the building. *Id.* at 135-36.

The court reasoned:

The goal in awarding damages for breach of contract is to give the innocent party the benefit of his bargain to place him in a position equivalent to that which he would have attained had the contract been performed. The court further stated that a defendant's damages must be reduced by any benefits accruing to the plaintiff as a consequence of the breach . . . Any benefit to the plaintiff arising from or as a result of the breach must reduce the damages otherwise payable.

*Id.* at 134.

While the language of the rule the court articulated is susceptible to both a broad and narrow reading, the factual background in that case suggests the appropriateness of a narrower reading. The court deducted from Tel-Ex Plaza's damages the cost of building the structure it had agreed to build. Failure to build flowed directly from Hardees' breach. Tel-Ex Plaza had agreed to build it a structure. Because Hardees refused to occupy the premises, Tel-Ex Plaza no longer had to build the structure. But for Hardees' breach, Tel-Ex would have had to put the building on the property.

This contrasts with the broad definition SPX advocates. SPX argues that I should adopt a broader interpretation of *Tel-Ex Plaza* whereby the appropriate question is not merely whether Dana could have acted for its benefit without breaching its obligations, but would it, as a practical matter, have occurred. Accordingly, SPX argues that I should allow it to offset any benefit accruing to Dana which were in some way followed upon the breach – even if Dana could not have claimed or obtained such benefit had the breach not occurred. The decision of the Michigan court in *Tel-Ex Plaza* involved a direct, readily perceptible and easily calculable benefit in favor of the non-breaching party.

In this case, however, as the broad discovery SPX is seeking indicates, SPX wants to offset benefits to Dana that came to it indirectly, may hardly be perceptible and will in all likelihood be difficult to calculate. To adopt this approach could unjustly relieve SPX of liability for damages that Dana would not have incurred had the first refusal warranty been truthful.

Decisions by other courts expounding on the scope of offsetting benefits support narrowing, rather than expanding the reach and range of offsets. *See Macon-Bibb County Water & Sewerage Authority v. Tuttle/White*, 530 F. Supp. 1048, 1055 (M.D. Ga. 1981) ("When the offset theory is available, it involves two basic situations. First, the means necessary for the plaintiff to have obtained the profit or savings from the subsequent contract would have been unavailable if the original contract had been performed. Second, the breach resulted in a direct and immediate savings to the plaintiff, i.e., savings on the cost of performance."); *Louisiana Sulphur Carriers, Inc. v. Gulf Resources & Chemical Corp.*, 53 F.R.D. 458, 462 (D. Del. 1971) (same); *Resolution Trust Corp. v. Fleischer*, 880 F. Supp. 1446, 1451 (D. Kan. 1995) ("While recognizing the viability of the rule where the defendant's conduct resulted in a direct and immediate savings to the plaintiff, such as in *Macon-Bibb*, no Kansas case has been cited to or located by this court which has discussed applying the concept to alleged benefits derived from tax treatment."); *In re Pac. Gas And Elec. Co.*, 2004 U.S. Dist. LEXIS 22023, *27-28 (N.D. Cal.) ("This method of offsetting benefits is used when "the breach resulted in a direct and immediate savings to the plaintiff, i.e., savings on the cost of performance."); *see also,* Restatement of Contracts § 335 (1932) ("If the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return or by excusing him from the performance of a condition precedent, the amount of this saving is deducted from the damages that would otherwise be recoverable.").

## B. Do the Settlement's Terms Fall Within the Offsetting Benefits Rule?

SPX secondarily argues that, even if I narrow the span of offsets, the discovery it seeks is still relevant. This is so, SPX contends, because, but for the breach, none of the benefits of Dana's settlement with Condumex would have come to it.

The settlement had several components. As to one of these components – a $10,280,000 Promec dividend Dana assigned Condumex – the parties agree discovery is appropriate. As to the other components, I agree with Dana that discovery should not occur.

When this suit originally arose, Dana owned a Mexican subsidiary, Autoprescia, that competed with Promec. As part of its settlement with Condumex, Dana sold Autoprecisa to Promec. Condumex, in turn, sold off one of its holdings, Vehyco to another firm. Dana and Condumex could have completed this set of inter-related transactions even if SPX had not breached the first refusal warranty.

Similarly, Dana, had it been able to keep the Promec shares acquired from SPX, could have fulfilled SPX's obligations under its joint venture with Condumex to provide technical assistance and licensing to Promec.[7]

SPX's argument that these transactions would not have occurred but for the breach of the warranty misses the point. SPX does not argue that Dana could not, had it been a joint venturer with Condumex in Promec, engaged in these transactions. Rather, it argues that, as a practical matter: 1)

---

[7]

Before Condumex got the shares from Dana following my decision upholding its right of first refusal, it argued strenuously that Dana, if allowed to keep the shares, would not fulfill SPX's obligations to provide technical assistance. Regardless of whether that apprehension on Condumex's part was well-founded, Dana would have remained able – and under the joint venture agreement, as I understand it, obligated to provide such assistance. That's all that matters at this point.

Condumex would have had no reason to participate in the transactions; 2) the parties would not have agreed to meet; and 3) the parties would not have been able to resolve their differences.

We have no way of knowing what might have happened: SPX's demand to expand the reach of the offsets [and its correlative demand for discovery] are grounded on speculation about damages. Courts generally decline to engage in such speculation when offsetting benefits against damages.

In *Louisiana Sulphur Carriers*, *supra,* 53 F.R.D. at 459, for example, plaintiff vessel contractor agreed to ship sulfur for defendant mining company. The mining company stopped selling sulfur. The plaintiff sought to recover on the contract. The defendant argued that the vessel contractor's damages were offset by the fact that plaintiff was able to ship more of a third-party's products.

As in this case, the defendant in *Louisiana Sulphur* argued that, but for the breach, the plaintiffs would not have been able to ship as much of the third-party's product as it did. Accordingly, the court had to credit these profits "to satisfy the 'but for' nature of the damages test." *Id.* Rejecting this argument and concluding that the connection between breach and offset was not sufficiently proximate, the court reasoned:

> In an economy with increasingly diversifying conglomerates, a literal application of this doctrine could greatly complicate any contract litigation and provide breaching defendants with economic windfalls which result from transactions by unrelated divisions of plaintiff's enterprise. The off-set theory under discussion cannot be construed literally. It can only be utilized when the benefits accruing to the plaintiff are sufficiently proximate to the contract to warrant reducing the plaintiff's damages and the failure to do so would permit the plaintiff to obtain unreasonable damages.

*Id.* at 462.

The court in *Louisiana Sulphur* pointed out that cases applying an offset involved situations in which "a plaintiff [was] unable to undertake both contracts because the peculiarities of the

15

contract or the inadequacies of its productive capabilities preclude completing both," so that "the defendant is credited with the second profit." *Id.* at 463.

This is not such a situation. SPX presents no evidence nor does it argue that Dana would have been precluded from the subsequent transactions with Condumex had the breach of the first refusal warranty not occurred. Rather, it simply speculates that Dana and Condumex would not have engaged in those transactions. But they *could* have whether the breach had occurred or not. That's what matters.

When it instituted this litigation, Condumex sought not only to acquire the Promec shares, but damages from SPX and Dana for SPX's failure to have honored the right of first refusal in the Condumex/SPX joint venture documents. Part of the Dana/Condumex settlement involved Condumex's transfer of those damage claims against SPX to Dana. Correlatively, Condumex also relinquished any claim for damages it might have had against Dana for its part in the acquisition of the Promec shares. Part of SPX's demand for discovery encompasses these aspects of the settlement between Condumex and Dana.

Dana got no benefit from the claims Condumex assigned to it because either it dismissed them voluntarily or I dismissed them on SPX's motion. The offsetting benefits rule is applicable where "the breach resulted in a direct and immediate savings to the plaintiff, i.e., savings on the cost of performance." *Louisiana Sulphur Carriers. Inc.*, *supra,* 53 F.R.D. at 462. Contrary to SPX's unsupported assertion, the proper question is not what value the claims had when Condumex transferred them, but whether they resulted in actual savings to Dana. *Nat'l Carbon Co. v. Richards & Co.*, 16 F. Supp. 239, 243 (D. Conn. 1935) (applying "actual savings" approach to claim for offset); *In re Pac. Gas And Elec. Co.*, *supra*, 2004 U.S. Dist. LEXIS 22023, *28 ("the Bankruptcy

16

Court erred in excluding from consideration the actual cost savings achieved by the QFs during the shutdown period of their facilities from March 5 to April 6, 2001.").

Courts refuse to engage in the kind of speculative guessing I would need to undertake were I to try to value a claim without a showing that it eventually led to actual, and thus, quantifiable savings. Showing such savings is, in any event, SPX's burden. *See Burlington v. Department of Educ.*, 736 F.2d 773, 802 (1st Cir. 1984) ("We do not accept the defendants' argument that the parents are entitled to offset the Town's average cost per student. We agree with the offset made by the district court following Judge Aldrich's ruling that the parents had the burden of showing 'the town's actual savings.'").

SPX presents no, nor does the factual record provide any, theory under which Condumex's claims might have resulted in a savings to Dana. SPX merely speculates that the claim must have had some value otherwise Dana would not have pursued it.

Finally, SPX presents no response to Dana's argument that by convincing Condumex to release its claims against Dana, Dana, in fact, created a savings for SPX. Dana posits that, had it been held liable to Condumex for any losses related to its acquisition of the Promec shares, SPX, in turn, would, under § 10.1(b)(i) of the Agreement, have been liable to Dana for such losses. Accordingly, if I valued the release as an offset I would, in effect, give SPX a second offset for the same item. As SPX has given me no reason to conclude otherwise, I accept Dana's argument.[8]

---

[8]

SPX also argues that Dana's transactions with Condumex are relevant under the avoidable consequences doctrine and mitigation principles. The "avoidable consequences" doctrine prevents parties from recovering damages which it could have avoided by reasonable effort or expenditure. *In re Prichard Estate*, 425 N.W.2d 744, 749 (Mich. App. 1988). Similarly, a plaintiff has a duty to mitigate his losses. *Lawrence v. Darrah & Associates*, 516 N.W.2d 43, 49 (Mich. 1994). Where he does not sufficiently mitigate his damages, he cannot recover them. *Edgecomb v. Traverse City*

17

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT:

1. SPX Corporation's motion to compel discovery [Doc. 253] be, and the same hereby is denied; and

2. Dana Corporation's motion for a protective order [Doc. 259] be, and the same hereby is granted.

3. A scheduling conference is set for October 20, 2008 at 1:30 p.m.

So ordered.

                                                s/ James G. Carr
                                                James G. Carr
                                                Chief Judge

---

*School Dist.*, 67 N.W.2d 87, 91 (Mich. 1954).

SPX, in its initial set of briefings asserted that I must allow discovery concerning all parts of the settlement to determine whether Dana either failed to mitigate its damages or limit avoidable losses. SPX never clearly articulated a theory under which the other components of the Agreement are relevant to whether Dana failed to mitigate. To the extent that Dana suffered additional losses as a result of the other components, it is irrelevant to SPX's argument as Dana does not try to hold it liable for them. To the extent that Dana realized any gain from the settlement, its doing so necessarily constituted mitigation.

Assuming that SPX is arguing that considering the value of the other items Dana transferred to Condumex, the $10,280,000 dividend was unnecessarily large, I reject this argument also. If the items Dana transferred resulted in a gain to Condumex which was related to the transfer of shares, any corresponding loss to Dana would have to be included in the calculation of Dana's total losses. Accordingly, to the extent that Dana overpaid in transferring the dividend, the amount of Dana's total losses would also increase, resulting in no net savings to SPX.

In its second set of briefs, after my request for re-briefing, SPX seemingly argues that these doctrines are alternative offset theories. SPX presents no legal support for the proposition that these theories may be used when calculating the plaintiff's offsetting gains.